IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KIRK LAMOREAUX,**

       Plaintiff,

vs.                                                                              Civ. No. 04-1374 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       Defendant.

**MEMORANDUM OPINION AND ORDER**

       **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed May 3, 2005. Docket No. 11. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken and will be granted.

**I.  PROCEDURAL RECORD**

       Plaintiff, Kirk J. Lamoreaux, filed an application for Social Security disability insurance benefits ("DIB") and Supplemental Security Income benefits ("SSI") on November 1, 1999. Tr. 76, 265. He alleged that he was disabled since December 31, 1992 due to bipolar disorder, diabetes, degenerative disease of the ankle, insomnia, irritable bowel syndrome and an inability to concentrate. Tr. 83. His application was denied at the initial and reconsideration level.

       The ALJ conducted a hearing on October 25, 2000.  At the hearing, Plaintiff was not represented by counsel.  On April 18, 2001, the ALJ issued an unfavorable decision.  With respect

to Plaintiff's SSI claim, the ALJ found that Plaintiff had the residual functional capacity to perform his past relevant work as a Program Analyst. Tr. 20. With respect to Plaintiff's DIB claim, the ALJ found that Plaintiff's date-last-insured was September 31, 1995, and that he had no severe impairment on or prior to that date. Tr. 18.

On August 8, 2003, the Court entered a Memorandum Opinion and Order ("Remand Order") and a Judgment remanding the case to the Commissioner on Plaintiff's claim for SSI benefits. The Court found that the ALJ erred in failing to give specific reasons for her credibility determination and failed to develop the record in not having the consultative examiner, Dr. Gerald Fredman, perform additional psychological testing. Tr. 304, 306. The court affirmed the ALJ's finding that the Plaintiff was not entitled to DIB benefits. A second hearing was held on April 14, 2004. The ALJ issued her decision on November 18, 2004 finding that the Plaintiff had the ability to perform physical work at all exertional levels but he was limited by his inability to have significant interactions with the general public, and by his inability to handle a moderate to high degree of stress. Tr. 289. The ALJ found that the Plaintiff could perform his past relevant work as a grocery stock person. Tr. 289. This decision is the final decision of the Commissioner. 20 C.F.R. § 404.984(a) & (d). Plaintiff filed his Complaint for judicial review of the ALJ's decision on December 8, 2004.

## II. STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting

*Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  20 C.F.R. § 404.1520(a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1)  he is not engaged in substantial gainful employment; 2)  he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3)  his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past.  20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

### III. DISCUSSION

The threshold issue before the Court is whether the ALJ complied with the Remand Order. A review of Tenth Circuit law and the ALJ's decision demonstrates that the ALJ did not comply with

the Remand Order.

      Generally, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case" and there must be compliance with the reviewing court's mandate. (citations omitted). Although primarily applicable between courts of different levels, the doctrine and the mandate rule apply to judicial review of administrative decisions, and "require[] the administrative agency, on remand from the court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." (citations omitted)

      With regard to the mandate rule, a diversion requires "exceptional circumstances, including (1) a dramatic change in controlling legal authority; (2) significant new evidence that was not earlier obtainable through due diligence but has since come to light; or (3) if blatant error from the prior...decision would result in serious injustice if uncorrected.'" (citation omitted). *Grigsby v. Barnhart*, 294 F.3d 1215, 1218-19 (10th Cir. 2002).

As previously stated, the Court remanded this matter on two grounds. One involved the consultative examination of Dr. Fredman. This evaluation was performed on January 12, 2000 at the request of Disability Determination Services ("DDS").[1]

In his report Dr. Fredman noted Plaintiff's past psychiatric history as follows: "Plaintiff used amphetamines for many years. He also used cocaine and marijuana. There was also a period of episodic alcohol abuse until about 1991." Tr. 116. He had one psychiatric hospitalization from December 17, 1999 to December 21, 1999. Plaintiff said he was hospitalized because his psychiatrist was concerned about him and wanted to do some testing. Plaintiff did not find the hospitalization helpful.

At the time of the consult Plaintiff was taking Lithium, Tegretol and Mellaril. *Id*. Plaintiff was receiving weekly psychotherapy with a psychiatrist at the University of New Mexico Mental Health Center. Tr. 15. Plaintiff also reported to Dr. Fredman that his sleep was disturbed, he had

---

[1] DDS is the state agency contracted by the Social Security Administration to develop the medical record in Social Security claims at the initial and reconsideration levels. 20 C.F.R. § 404.1519s.

gained 50 pounds in the previous year, his energy and motivation were diminished, he was easily distracted, his libido was absent, he had only one friend and he "holds all of humanity in contempt." Tr. 116.

In his assessment Dr. Fredman wrote:

"...Since stopping amphetamines four years ago, there has been ongoing depression, with periodic hypomania...**There seems to be some evidence of a personality disorder with long-term maladaptive behavior patterns.  I would suggest psychological testing to further clarify this particular issue**." Tr. 118. (emphasis added)

The Remand Order states in part that:

In this case, according to Dr. Feldman (sic), psychological testing is required to clarify the issue of whether Lamoreaux suffers from of (sic) personality disorder with long-term maladaptive behavior patterns.  Because this may impact his ability to work, a remand is warranted.  On remand, the ALJ should consult with Dr. Feldman (sic) regarding the psychological testing Dr. Feldman(sic) considered necessary.  Tr. 307.

On remand, the ALJ did not consult with Dr. Fredman or have Dr. Fredman perform any additional psychological testing.  Her reasoning is as follows:

United States Magistrate Judge Svet also recommended consultation with Dr. Fredman concerning the need for a consultative psychological exam.  However, a review of Dr. Fredman's statement indicates that he was aware of the claimants treatment at the University of New Mexico Mental Health Center for depression with periodic hypomania,       and suggested a consultative psychological exam to "clarify' (sic) the issue of whether the     claimant had personality disorder with long-term maladaptive patterns (exhibit 2F, p.5).

Thus, Dr. Fredman was concerned about whether the claimant's psychological problems had been properly diagnosed.  While dealing with a somewhat different issue, the Tenth Circuit Court of Appeals in the case of Flint v. Sullivan, 951 F.2d 264 (1991) at p. 268 held that:
The existence or absence of a diagnosis with a name for a physical or mental condition is a significant medical consideration.  However, again it must be stated that the issue is the existence of a disability at a particular time and not the identification of a cause.

In the current case, ample treatment records exist to assess the severity of the claimant's mental impairment at all relevant times.  Clarification of whether the claimant has a

5

> personality disorder would not be dispositive of the relevant issues in this or significantly add to the evidence concerning the severity of his psychological impairment or impairments.

Tr. 283-84.

The ALJ's reasoning for deviating from the mandate rule does not meet the "exceptional circumstances" requirement. The ALJ did not cite to any change in legal authority, significant new evidence or "blatant error" in the Court's Remand Order. Rather, she found, contrary to the Remand Order, that additional psychological testing was not required. She then based her opinion, for the most part, on the records that were before the prior ALJ with the exception of making a brief reference to a few additional mental health records. Tr. 287. Clearly, the ALJ erred in not complying with the Remand Order. It appears that the ALJ read the Remand Order as merely recommending that she have Dr. Fredman perform additional testing on the Plaintiff. A reading of the Remand Order demonstrates that the matter was remanded because the psychological testing recommended by Dr. Fredman was not performed. Tr. 306-07. Thus, the ALJ, pursuant to the Remand Order, was required to consult with Dr. Fredman concerning psychological testing. Furthermore, the ALJ's reliance on the *Flint* case is misplaced. The issue in *Flint* was whether Plaintiff had submitted any evidence of an actual disability during the period the claimant maintained insured status. *Flint*, 951 F.2d at 267.

The Remand Order also required the ALJ to "set forth the specific evidence she relies on in arriving at her credibility determination." Tr. 304. The ALJ's finding on Plaintiff's credibility is as follows:

> The undersigned finds the claimant's allegations regarding his limitations are not supported to the degree alleged. Rather, the record fails to support a finding that the claimant has severe exertional limitations; is unable to interact with others; has severe agoraphobia; or, other impairments which would severely restrict his functional capacity. Rather, the record documents a good response to treatment, and moderate limitations of the ability to interact with other

6

and deal with stress.
Tr. 289.

As this matter will be remanded, the Court does not need to decide if the ALJ's credibility determination complies with the Remand Order. However, on remand, the Court advises the Commissioner to "closely and affirmatively link her credibility determination to substantial evidence." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

Finally, Plaintiff asserts and the Court agrees that the ALJ appears to have chosen parts of the evidence to rely on to support her finding. On remand, the Commissioner is reminded that the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

As the Commissioner has failed to follow a prior Remand Order of the Court, the Court will give the Commissioner a limited period of time to complete the proceedings required by this Memorandum Opinion and Order. The Court finds that the Commissioner should be ordered to complete her proceedings on remand through and including a decision of the Appeals Council no later than four months from date of the entry of judgment in this case.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand the Administrative Decision is granted for proceedings consistent with this Memorandum Opinion and Order.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**
**(sitting by designation)**